**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SALIL SHARMA, *individually and on behalf of* SAGE GROUP CONSULTING, INC.,

        Plaintiff,

v.

VIJAY GUPTA *et al.*,

        Defendants.

Civil Action No. 20-3446 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on separate motions to dismiss Plaintiff Salil Sharma's ("Sharma") Amended Complaint. The first is from Defendant ProSoft Technology Group, Inc. ("ProSoft") to dismiss for failure to state a claim. (ECF No. 8.) The second is from Defendants Vijay Gupta ("Vijay"), Rajeev Gupta ("Rajeev"), Jyoti Gupta, Brian Mead ("Mead"), Exceleo Business Consulting, Inc., and Exceleo Group, Inc. (collectively, the "Gupta Defendants," and together with ProSoft, "Defendants") to compel arbitration and dismiss Sharma's Amended Complaint. (ECF No. 33.) Sharma opposed ProSoft's motion (ECF No. 12), and ProSoft replied (ECF No. 14). Sharma and ProSoft separately opposed the Gupta Defendants' motion (ECF Nos. 45, 46), and the Gupta Defendants replied (ECF No. 49). The Court has carefully considered the parties' submissions and decides the motions without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies the Gupta Defendants' motion and grants ProSoft's motion.

I.  **BACKGROUND**

This case arises out of a business breakdown between two shareholders. Back in 2004, Sharma and others established two corporate entities. The first was Sage Group Consulting, Inc. ("Sage"), a New Jersey-based S corporation that had two shareholders, Sharma and Vijay. (Am. Compl. ¶¶ 6, 16, ECF No. 5.) The second was Sage Group, a New Jersey-based partnership that initially had four partners including Sharma and Vijay. (*Id.* ¶ 17.) The partners abandoned the partnership in July 2005. (*Id.* ¶ 18.)

Regarding Sage, the Amended Complaint alleges that the Gupta Defendants devised a scheme to deprive Sage of one of its core assets. It alleges that Vijay lied to Sharma about the profitability of one of Sage's divisions, thereby causing Sharma to consent to the sale of that division (the "Division") to Caldwell Investment LLC ("Caldwell"). (*Id.* ¶¶ 35-36.) Unbeknownst to Sharma, however, Vijay caused Caldwell to then sell the Division to ProSoft, an entity controlled by Vijay's brother Rajeev and Mead. (*Id.* ¶¶ 37-38.) According to the Amended Complaint, the Division was valuable to Sage because it owned several licenses and employed key personnel. (*Id.* ¶ 38.) Eventually, another company, Kellton Tech Solutions Inc. ("Kellton"), acquired ProSoft for $14 million. (*Id.*) Nevertheless, the Amended Complaint alleges that no sale proceeds of the Division ever accrued to Sage. (*Id.* ¶ 40.)

Part of this dispute turns on where these events unfolded. Sharma is based in New Jersey, Vijay and Rajeev in Illinois, and Mead in Connecticut. (*Id.* ¶¶ 7-10.) Sage is headquartered in New Jersey and has operations in both New Jersey and Illinois. (*Id.* ¶¶ 6, 25.) The Division comprised part of Sage's Illinois operations, and ProSoft was an Illinois-based company. (*Id.* ¶¶ 15, 34.) Regarding where the misrepresentation about the Division's profitability took place, exhibits attached to the Amended Complaint reveal that it occurred during a 2009 board meeting in New

Jersey. (*See* Am. Compl., Ex. C (Sage Corporate Documents) *36-37, ECF No. 5-3.)[1] The Amended Complaint does not allege where Kellton is headquartered.

In any event, on behalf of Sage, Sharma sued the Gupta Defendants and ProSoft, alleging, as relevant here, three causes of action and two remedies: unjust enrichment, conversion and misappropriation, aiding and abetting breach of fiduciary duty, declaratory relief, and imposition of a constructive trust. (*See generally* Am. Compl.) ProSoft moved to dismiss all five, arguing that under either Illinois or New Jersey law, the Amended Complaint insufficiently pled the causes of action and remedies. (*See generally* ProSoft's Mot. to Dismiss Moving Br., ECF No. 8-1.) Following briefing on ProSoft's motion, the Gupta Defendants additionally moved to compel arbitration and dismiss the Amended Complaint. In their brief, the Gupta Defendants urge that Sage Group's Partnership Agreement (*see* Am. Compl., Ex. B (Partnership Agreement)) governs the Amended Complaint's causes of action (*see* Gupta Defs.' Mot. to Compel Moving Br. 10, ECF No. 33-1). Because the Partnership Agreement contains an arbitration clause, according to the Gupta Defendants, the Court must compel arbitration and dismiss this case. (Gupta Defs.' Mot. to Compel Moving Br. 7, 10.) These motions are now ripe for resolution.

## II.   LEGAL STANDARD

### A.   Motion to Compel Arbitration

"Because arbitration is a matter of contract, before compelling arbitration pursuant to the Federal Arbitration Act [('FAA')], a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted). "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not

---

[1] Pin-cites preceded by asterisks refer to the pagination atop the CM/ECF header.

3

in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "By contrast, '[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that [that party] do so.'" *Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2019 WL 4855624, at *2 (D.N.J. Oct. 2, 2019) (first alteration in original) (quoting *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)).

"It is well established that the [FAA] reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis*, 560 F.3d at 160 (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "But this presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* (citation and internal quotation marks omitted).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations

---

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. DISCUSSION

Before the Court are two motions to dismiss—ProSoft's for failure to state a claim and the Gupta Defendants' to compel arbitration. As the Gupta Defendants' motion asserts a jurisdictional challenge, the Court begins its analysis there.

### A. The Court Denies the Gupta Defendants' Motion to Compel Arbitration.

The Gupta Defendants move to dismiss this case, asserting that the Court lacks jurisdiction because the parties' Partnership Agreement contains an arbitration clause.[3] According to the Gupta Defendants, the claims here "squarely fall within the scope of the Partnership Agreement," and "the parties must be compelled to resolve their respective matters through Arbitration." (Gupta Defs.' Mot. to Compel Moving Br. 7, 10.) Sharma resists this claim, arguing that the partnership dissolved in July 2005. (Sharma's Opp'n Br. to Gupta Defs.' Mot. to Compel 7-8, ECF No. 45.) ProSoft adds that arbitration is unnecessary because the Amended Complaint and its exhibits show

---

[3] Although docketed as a motion to dismiss, the Court construes the Gupta Defendants' motion as one to compel arbitration. *See Turner v. Evers*, 726 F.2d 112, 114 (3d Cir. 1984).

no arbitrable causes of action. (ProSoft's Opp'n Br. to Gupta Defs.' Mot. to Compel 12, ECF No. 46.)

The Court agrees that arbitration is improper here. As an initial matter, the Court must determine the appropriate standard of review for motions to compel arbitration. Two options exist: review akin to a motion to dismiss for failure to state a claim under Rule 12(b)(6), or review for summary judgment under Rule 56. In deciding which standard applies, the Court considers whether "the face of a complaint, and documents relied upon in the complaint" establishes that "certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). If the issue of arbitrability is clear on the face of the complaint and its exhibits, a motion-to-dismiss standard applies. *Id.* Here, no question exists that the Amended Complaint and the attached documents establish arbitrability—the Amended Complaint attaches the Partnership Agreement containing the arbitration clause. (Partnership Agreement ¶ 20.) The Court thus proceeds under a Rule 12(b)(6) analysis.

Taking all allegations in the Amended Complaint as true and all inferences in favor of Sharma, the Court concludes that the Amended Complaint's causes of action are not arbitrable. To establish arbitrability, the Court assesses "whether there is a valid agreement to arbitrate" and "whether that agreement encompasses the dispute at issue." *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (citing *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019)). The Gupta Defendants fail the second test. The arbitration provision of the Partnership Agreement (Sage Group) applies to "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach hereof." (Partnership Agreement ¶ 20.) Yet, the Amended Complaint plainly asserts

claims on behalf of Sage Group Consulting, Inc., not the partnership Sage Group. (Am. Compl. 1.) Indeed, all the conduct at issue in the Amended Complaint relates to Sage as a corporation not Sage as a partnership. (*See, e.g.*, *id.* ¶ 35 ("At a point in time following the establishment of the Solution Division [in 2008–2009], Vijay engaged in a secret scheme to divest, and did divest, this said Solution Division of Sage to Prosoft without board or shareholder knowledge or approval."); ¶ 41 ("Vijay has operated many companies with similar names as Sage for the sole purpose of hiding Sage funds to avoid reporting revenue to Sage and its other shareholders."); ¶ 55 ("Vijay has not disclosed any accounting transaction for the year 2019 and revenue in corporate books since year 2018.").)

Tellingly, the Amended Complaint's causes of action also arise from conduct occurring well after 2005. That's significant because the Gupta Defendants have a temporal problem: the Amended Complaint alleges that the partners abandoned the partnership in July 2005. (Am. Compl. ¶ 18 ("In or about July[] 2005 the original parties to the Partnership Agreement abandoned the partnership, distributed shares of stock in Sage and from that point forward held their meetings as Shareholder meetings.").) Sharma reinforces that allegation by attaching to the Amended Complaint several corporate governance documents for Sage, buttressing that the partnership wound up some time ago and is not relevant to this dispute. (*See generally* Am. Compl. Ex. C.) The Gupta Defendants attempt to answer this temporal problem by contending that the Partnership Agreement also applied to Sage as a corporation. But that argument founders because a partnership is a different corporate form from a corporation and because the Court accepts Sharma's pleadings as true at this stage. *See* 1 NJ Corporations and Other Business Entities § 1.03 (2021) (describing

differences between partnerships and corporations).[4] The Court accordingly denies the Gupta Defendants' motion to compel arbitration.

**B.    The Court Grants ProSoft's Motion to Dismiss.**

Next up is ProSoft's motion to dismiss. ProSoft argues that none of the Amended Complaint's causes of action apply to it. ProSoft also asserts that substantive Illinois law applies to these causes of action. The Court thus first analyzes the choice-of-law issue and then considers the Amended Complaint's causes of action against ProSoft.

**1.    New Jersey and Illinois Law Apply.**

The Court applies a familiar analysis to determine which law applies. Courts sitting in diversity apply the choice-of-law test of the forum state. *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). New Jersey applies the most-significant-relationship test, which comprises two questions: whether an actual conflict exists, and (if so), which state has the most significant relationship to the controversy. *See Caspersen ex rel. Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 36 (D.N.J. 2020) (quoting, among others, *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008)). If no actual conflict exists or if New Jersey has the most significant relationship to the causes of action here, New Jersey law applies. *See id.*

---

[4] The Gupta Defendants make much over Sharma's prior complaint, which asserted a breach-of-contract claim based on the Partnership Agreement. (*See* Compl. ¶¶ 55-58, ECF No. 1.) But the Amended Complaint dropped that claim, and Sharma "cannot be bound by allegations in a prior complaint." *Danon v. Vanguard Grp., Inc.*, No. 15-6864, 2018 WL 5785342, at *4 (E.D. Pa. Nov. 2, 2018) (quoting *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172 (3d Cir. 2013)); *see also* 6 Wright & Miller, Federal Practice and Procedure § 1474 (3d ed. 2021) ("Perhaps the most common use of Rule 15(a) is by a party seeking to amend in order to cure a defective pleading.").

Both parties mix and match their application of New Jersey and Illinois law. (*E.g.*, ProSoft's Mot. to Dismiss Moving Br. 11 ("Where there is no apparent conflict, however, ProSoft cites herein to New Jersey and/or Illinois law interchangeably.").) Neither squarely addresses whether an actual conflict exists. The Court's own review of the Amended Complaint's causes of action reveals differences in the underlying law. *See Camp Jaycee*, 962 A.2d at 460 (describing that actual-conflict analysis "is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them" (internal quotation marks and citations omitted))). The Court thus considers each cause of action in turn to determine whether Illinois or New Jersey law applies.[5]

          *a.*    *Unjust Enrichment*

To start, ProSoft relies on Illinois and New Jersey law in moving to dismiss the Amended Complaint's causes of action for unjust enrichment. Each state defines the elements of unjust enrichment slightly differently. *Compare, e.g., EnviroFinance Grp., LLC v. Env't Barrier Co.*, 113 A.3d 775, 790 (N.J. Super. Ct. App. Div. 2015) ("To demonstrate unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust' and that the plaintiff 'expected remuneration' and the failure to give remuneration unjustly enriched the defendant." (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (1994))), *with Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1043 (Ill. App. Ct. 2015) ("To prevail on a claim for unjust enrichment, a plaintiff must prove that the defendant

---

[5] It notes, however, that these choice-of-law rulings are preliminary—especially considering the lack of proper briefing on the issue. *See Krys v. Aaron*, 106 F. Supp. 3d 472, 481 (D.N.J. 2015) ("[T]he factual inquiry necessary for a choice-of-law analysis often proves inappropriate or impossible at the motion to dismiss stage when little or no discovery has taken place." (internal quotation marks omitted) (quoting *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 700-01 (D.N.J. 2011))).

'retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.'" (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (1989))). Notably however, this Court is not the first to search for conflicts in unjust enrichment claims between New Jersey and Illinois. In one case in the Eastern District of Pennsylvania, for example, the court conducted a fifty-state survey for unjust enrichment claims and found that both New Jersey and Illinois "require[] proof of essentially the same three elements: (1) a benefit is conferred upon the defendant; (2) at the plaintiff's expense; (3) under circumstances that would make defendant's retention unjust." *Powers v. Lycoming Engines*, 245 F.R.D. 226, 230-31 (E.D. Pa. 2007), *vacated on other grounds*, 328 F. App'x 121 (3d Cir. 2009); *see also Avram v. Samsung Elecs. Am., Inc.*, Nos. 11-6973, 12-976, 2013 WL 3654090, at *20 (D.N.J. July 11, 2013) (listing cases) ("For unjust enrichment claims, many courts have found that there is no actual conflict between different states' laws."). Tellingly, the court found that, "[a]lthough there are numerous permutations of the elements of the cause of action in the various states, there are few real differences." *Powers*, 245 F.R.D. at 231; *see also In re Mercedes-Benz Tele Aid Cont. Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict." (citation omitted)), *abrogated on other grounds by Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 210 (3d Cir. 2013).

Considering these authorities, the Court is satisfied that no real conflict exists. "In other words, regardless of which state's unjust enrichment elements are applied, the result is the same." *Powers*, 245 F.R.D. at 231. Accordingly, as this Court sits in New Jersey, it will apply New Jersey law to the Amended Complaint's unjust enrichment claim.

### b. Conversion and Misappropriation

The Court next considers the conversion and misappropriation claim, which it presumes to be a cause of action for conversion. *See* 18A Am. Jur. 2d Corporations § 623 (Feb. 2022) ("Even in the case of a closely held corporation, shareholders generally have no independent cause of action and cannot recover personally for misappropriation of corporate assets."). Relative to New Jersey, Illinois appears to have additional elements for conversion. *Compare Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 90 N.E.3d 463, 467 (Ill. App. Ct. 2017) ("The four elements of conversion are: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." (citations omitted)), *with Latef v. Cicenia*, No. A-5747-13T2, 2015 WL 10458543, at *5 (N.J. Super. Ct. App. Div. Mar. 14, 2016) ("The elements of conversion are: (1) 'the property and right to immediate possession thereof belong to the plaintiff' and (2) 'the wrongful act of interference with that right by the defendant.'" (citation omitted)). Because the elements are not the same, an actual conflict exists and the Court proceeds to determine which state bears the most significant relationship to this claim.

Section 145 of the Restatement (Second) of Conflict of Laws governs conversion claims. *See Pet Gifts USA, LLC v. Imagine This Co.*, No. 14-3884, 2015 WL 570264, at *3 n.7 (D.N.J. Feb. 11, 2015). That section provides four factors that the Court must evaluate "according to their relative importance with respect to the particular issue":

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (Am. L. Inst. 1971) (last updated Mar. 2022). Here, the Court finds the first two factors dispositive of this choice-of-law issue. According to the Amended Complaint, Sage sold the Illinois-based Division ultimately to another Illinois-based Defendant, ProSoft. (Am. Compl. ¶¶ 15, 37.) The focus of the conversion is thus Illinois, and the Court will apply Illinois law to the Amended Complaint's conversion claim.

                        c.      *Aiding and Abetting Breach of Fiduciary Duty*

The Court finally considers the Amended Complaint's claim for aiding and abetting a breach of fiduciary duty. Here, the elements appear to be the same between Illinois and New Jersey. *Compare Vasiljevich v. Levit*, No. 1-10-1329, 2011 WL 10068639, at *7 (Ill. App. Ct. Oct. 31, 2011) (noting that aiding-and-abetting claim requires "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation" (quoting *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. Ct. 2003))), *with Armada v. Kuzovkin*, No. A-1893-19, 2021 WL 4026177, at *8 (N.J. Super. Ct. App. Div. Sept. 3, 2021) (noting that aiding-and-abetting claim requires "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation" (ultimately quoting *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004))). Because no conflict appears to exist, the Court will apply New Jersey law to this claim.

### 2. The Court Dismisses the Unjust Enrichment Claim.

With the applicable law set, the Court now assesses the adequacy of the Amended Complaint's pleadings. Starting with the unjust enrichment claim, under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust and that the plaintiff expected remuneration and the failure to give remuneration unjustly enriched the defendant." *EnviroFinance Grp., LLC*, 113 A.3d at 790 (internal quotation marks and citation omitted). On its face, the unjust enrichment claim must fail because Sage did not expect remuneration from ProSoft. The Amended Complaint alleges that Sage sold the Division to Caldwell, not ProSoft. Indeed, at the time Sage parted with the Division, neither it nor Sharma could have known that the Division would ultimately end up with ProSoft. *See Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (dismissing unjust enrichment claim where complaint did not allege expectation of remuneration "at the time" the benefit was conferred).

Other problems plague the unjust enrichment claim. For one, numerous courts have concluded that New Jersey requires some relationship between the parties when alleging unjust enrichment. *See Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) (listing cases) ("New Jersey law requires a direct relationship between the parties."). The Amended Complaint alleges no such relationship—contractual or otherwise. *See Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. 14-4657, 2015 WL 1969380, at *9 (D.N.J. Apr. 29, 2015) ("[The] [p]laintiff may be injured here, but there is no doubt that, as pled, [p]laintiff does not confer any benefit on [d]efendant."). Relatedly, New Jersey recognizes unjust enrichment as a quasi-contractual claim only—not as an independent tort claim. *See Cafaro v. HMC*, No. 07-2793, 2008 WL 4224801, at *12 (D.N.J. Sept. 8, 2008). Indeed, "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or

conversion." *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (citation omitted). That is precisely what's at issue here. The Amended Complaint alleges that ProSoft unjustly enriched itself by converting Sage's corporate assets. Thus, conversion is the proper tort cause of action; unjust enrichment is the means to get there. *See Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (listing cases dismissing with prejudice unjust enrichment claims brought as independent torts).[6]

### 3. The Court Dismisses the Conversion Claim.

Under Illinois law, conversion claims require: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Mareskas-Palcek*, 90 N.E.3d at 467. This claim fails on straightforward pleading grounds. Simply put, the Amended Complaint does not allege what was wrongful about ProSoft's acquisition of the Division from Caldwell, and ultimately from Sage. Rather, it alleges some sort of scheme between Vijay, Rajeev, and Mead to ultimately vest ProSoft with control of the Division. (*See* Am. Compl. ¶ 35 ("Vijay engaged in a secret scheme to divest, and did divest, this said Solution Division of Sage to Prosoft without board or shareholder knowledge or approval.")). The Court notes that these allegations are undercut by other allegations showing that Sage approved the sale of the Division to Caldwell. (*See id.* ¶ 36 ("The Solutions Division transfer to Caldwell was consented to in a Board of Director's meeting . . . .").) Further, the speculative allegations of Defendants' scheme

---

[6] Because the Court dismisses the Amended Complaint's unjust enrichment claim, it also dismisses the remedies of constructive trust and declaratory relief derived therefrom. *See Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 771-72 (D.N.J. 2013) (noting that unjust enrichment is element of constructive trust).

are unadorned with any facts to buttress them. For example, the Amended Complaint does not allege facts showing how the scheme worked, how ProSoft was involved in it, how Caldwell was involved in it, and how Sharma came to learn about it. Without these critical supporting allegations, the Court cannot assess how ProSoft's acquisition of the Division was unauthorized or wrongful.

### 4.     The Court Dismisses the Aiding-and-Abetting Claim.

The Amended Complaint's aiding-and-abetting claim suffers from the same flaw. To state a claim for aiding and abetting, Sharma must allege three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Armada v. Kuzovkin*, No. A-1893-19, 2021 WL 4026177, at *8 (N.J. Super. Ct. App. Div. Sept. 3, 2021) (quoting *N.J. Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2013)). The Amended Complaint fails to allege the second and third elements. It alleges nothing about ProSoft's knowledge of the sale of the Division to Caldwell, nor its knowledge of a broader conspiracy to defraud Sage. Said another way, as alleged, ProSoft's role in the scheme is too attenuated for the Court to assess whether it could have aided and abetted a breach of fiduciary duty. *See Cevdet Aksüt Oğullari Koll. Sti. V. Cavusoglu*, No. 14-3362, 2018 WL 585542, at *4 (D.N.J. Jan. 29, 2018) (dismissing with prejudice aiding-and-abetting claim where "there is no evidence in the record" that alleged participant "had any knowledge" of scheme); *McCormac*, 904 A.2d at 783 ("However, the mere common plan, design or even express agreement is not enough for liability in itself, and there must be acts of a tortious character in carrying it into execution." (internal quotation marks and citation omitted)).

## IV.   CONCLUSION

For the reasons above, the Court denies the Gupta Defendants' motion and grants ProSoft's motion. It will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE