**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIL SHARMA,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>    v.<br><br>VIJAY GUPTA,<br><br>    Defendant/Counterclaim Plaintiff. | Civil Action No. 20-3446 (RK) (RLS)<br><br>**<u>MEMORANDUM OPINION</u>** |

**<u>KIRSCH, District Judge</u>**

**THIS MATTER** comes before the Court upon the Motion to Dismiss filed by Plaintiff/Counterclaim Defendant Salil Sharma ("Sharma" or "Counterclaim Defendant"), ("Mot.," ECF No. 71), seeking dismissal of Defendant/Counterclaim Plaintiff's Vijay Gupta's ("Gupta" or "Counterclaim Plaintiff") Counterclaim. (ECF No. 59.) Gupta filed a brief in opposition, ("Opp'n.," ECF No. 78), and Sharma filed a brief in reply, ("Reply," ECF No. 83). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Sharma's Motion to Dismiss, (ECF No. 71), is **GRANTED** in part and **DENIED** in part.

## I.   **BACKGROUND**[1]

### A. PROCEDURAL HISTORY

The underlying facts of this dispute are thoroughly set forth in the March 31, 2022 decision of the Honorable Michael A. Shipp, U.S.D.J., ("Mem. Op.," ECF No. 50), granting Defendant ProSoft Technology Group, Inc.'s Motion to Dismiss the claims against it and denying Defendants Gupta, Rajeev Gupta, Jyoti Gupta, Brian Mead, Exceleo Business Consulting, Inc., and Exceleo Group Inc.'s Motion to Compel Arbitration. The Court cites the facts and procedural history of the matter set forth in that decision and recounts only the details necessary to resolve the motion discussed herein.

On March 31, 2020, Sharma, individually and on behalf of Sage Group Consulting, Inc., brought suit against, *inter alia*, Gupta and Prosoft Technology Group Inc. ("Prosoft") (ECF No. 1.) Sharma thereafter filed an Amended Complaint on July 16, 2020. (ECF No. 5.) With respect to Gupta, Sharma asserted claims, *inter alia*, of usurpation of corporate opportunities, breach of the duties of loyalty, care, and good faith and fair dealing, conversion and misappropriation. (*See generally, id.*) Gupta moved to compel arbitration, and Prosoft moved to dismiss. On March 31, 2022, the Honorable Michael A. Shipp, U.S.D.J. denied Gupta's Motion, but granted Prosoft's Motion to Dismiss. (ECF Nos. 50 and 51.) Following Judge Shipp's March 31, 2022 decision, Gupta answered and asserted counterclaims against Sharma in his individual capacity. (ECF No. 59.) Sharma moved to dismiss the counterclaim and for sanctions under Federal Rule of Civil Procedure 11, (ECF No. 71), and this motion is now ripe before the Court.

---

[1] The Court notes that the filings in this matter are, at best, difficult to discern. As Sharma is proceeding *pro se*, the Court will construe his Motion to Dismiss liberally. *See Shah v. Caesars Entm't Corp.*, No. 1814108, 2019 WL 5558356, at *2 (D.N.J. Oct. 28, 2019) ("A document filed *pro se* is to be liberally construed."). The Court will do its best to construe the factual allegations discussed by the parties.

In his Memorandum Opinion, with respect to Gupta, Judge Shipp denied Gupta's Motion to Compel Arbitration.[2] Judge Shipp explained that Gupta and Sage, among others, created two corporate entities: Sage Group Consulting, Inc. ("Sage") and Sage Group, "a New Jersey-based partnership," that was ultimately abandoned in July 2005. (Mem. Op. at 2; *see also* ECF No. 59, "Countercl." ¶ 3 (explaining that Sage is "an IT services company" incorporated on February 17, 2004 in New Jersey).)[3] In denying the Motion to Compel Arbitration, Judge Shipp held that the "Amended Complaint's causes of action are not arbitrable." (Mem. Op. at 6.) Judge Shipp held that the claims asserted in the Amended Complaint were on behalf of Sage, the corporation, not the partnership, and that the partnership had been abandoned in 2005. (*Id.* at 7.) The Opinion focused on the fact that the parties had created a corporation, that the facts set forth in the amended complaint cited only to the corporation, and that any arbitration provision in a since abandoned partnership did not apply. (*Id.*)

### B. FACTUAL BACKGROUND

In the present counterclaim, Gupta alleges that Sharma and Gupta, along with incorporating Sage, also entered into a "Partnership Agreement" to "outlin[e] the terms by which they would operate the company." (Countercl. ¶¶ 3, 6.) Since 2010, Sharma and Gupta have been the only two shareholders, each owning approximately fifty (50) percent of the shares. (*Id.* ¶ 8.) Gupta is based in Illinois, while Sharma resides in New Jersey. (*Id.* ¶ 9.)

---

[2] Judge Shipp noted that the motion was "docketed as a motion to dismiss," but "construe[d] . . . [the] motion as one to compel arbitration." (*See* Mem. Op. at 5 n.3.)

[3] The Court notes that the counterclaim and the answer are contained within the same document. (*See* ECF No. 59.) The paragraph numbering resets at page twenty-six (26), such that ECF No. 59 contains duplicative numbering. As such, references to ECF No. 59 ¶ 1 could refer to either page one (1) (the answer) or page twenty-six (26) (the counterclaim). Therefore, for ease of reference, any references to a paragraph number in ECF No. 59 are citations to the counterclaim, and the Court will cite to the answer by ECF number and denote such references with an asterisk.

Gupta alleges that Sharma has failed to uphold his duties to Sage. He claims that Sharma, has "diverted Sage funds . . . [and] Sage clients and employees" to an Indian company in which he is a co-owner. (*Id.* ¶ 11.) He also contends that Sharma and his wife have "created multiple entities here in the United States" which they have used to allegedly defraud Sage and divert revenue from same. (*Id.* ¶ 12.)

Gupta points to two matters in particular that he contends demonstrate Sharma's alleged unlawful conduct. First, Gupta alleges that Sharma directed Sage to accept $700,000 from a third-party, Arius Libra. (*Id.* ¶¶ 16–17.) This transaction was done without Gupta's knowledge or consent. (*Id.*) However, Arius Libra was insolvent at the time, and a New York Court entered judgment against Sage and Parmar, a board member of Arius Libra among others, when a creditor of Arius Libra, brought suit. (*Id.* ¶ 15–18); *see also Wimbledon Financing Master Fund, LTD. v Sage Grp. Consulting Inc.*, No. 654559/2017 (N.Y. Sup. Ct.).

Second, Gupta alleges Sharma involved Sage in an unlawful securities fraud conspiracy, which has led Sage to be sued by Orion Healthcorp, Inc. in a bankruptcy proceeding pending in the Bankruptcy Court for the Eastern District of New York. (Countercl. ¶¶ 19–20); *see also Orion HealthCorp., Inc., et al v. Salil Sharma, et al.*, No 20-08053 (Bankr. E.D.N.Y.). In this scheme, Gupta alleges that Sharma "create[ed] fake diligence reports, fake websites, and fake invoices, all in in exchange for exorbitant fees," and involved Sage "without [Gupta's knowledge] . . . despite this type of work being[] outside the scope of Sage's business." (Countercl. ¶ 21.) For example, Sharma allegedly created "a fake website for [Northstar First Health, LLC]" even though Northstar was a "sham entity." (*Id.* ¶¶ 23–24.) Gupta contends that Sharma, using a pseudonym, also signed a purchase agreement for Northstar to acquire a medical billing company, all for Northstar to be acquired by CHT, a company owned by Parmar, in order for CHT to raise funding. (*Id.* ¶¶ 20–26.)

Gupta also alleges that Sharma used Sage's assets to appear as those for another company, Phoenix, which was then acquired by CHT. (*Id.* ¶ 28.) However, Phoenix allegedly had no assets of its own. (*Id.*) For his role in assisting with these transactions, Sharma was paid over $10,000,000. (*Id.* ¶ 29.)

## II.  **LEGAL STANDARD**

A court reviews "a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint." *Mantua Twp. Bd. of Educ. v. E.K. on behalf of W.W.*, No. 22-7496, 2023 WL 6389104, at *4 (D.N.J. Sept. 30, 2023) (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011)). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a counterclaim for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). However, the Court "need not credit bald assertions or legal conclusions" or allegations "involv[ing] fantastic factual scenarios lacking any arguable factual or legal basis" or that "surpass all credulity." *Degrazia v. F.B.I.*, No. 08-1009, 2008 WL 2456489, at *3 (D.N.J. June 13, 2008), *aff'd*, 316 F. App'x 172 (3d Cir. 2009) (citations and quotation marks omitted).

A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Factual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). "Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth." *Valentine v. Unifund CCR, Inc.*, No. 20-5024, 2021 WL 912854, at *1 (D.N.J. Mar. 10, 2021) (citing *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)).

## III.   DISCUSSION

### A.   COUNT ONE

Count One of Gupta's Counterclaim alleges a breach of contract claim against Sharma. (Countercl. ¶¶ 32–35.) Gupta alleges that Sharma breached the Partnership Agreement in a myriad of ways, including "[i]nvolving Sage in work matters outside Sage's scope of business" and "[u]sing the name Sage for his own personal benefit or the benefit of others." (*Id.* ¶ 34.) These breaches, Gupta contends, caused him to suffer losses "in excess of $7,000,000." (*Id.* ¶ 35.) In his Motion to Dismiss, Sharma argues that no contract existed between him and Gupta, relying in part on Judge Shipp's prior Memorandum Opinion that the conduct at issue pertained to Sage the corporation. (Mot. at 8–9.)

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)); *see Scudder v. Colgate Palmolive Co.*, No. 16-7433, 2018 WL 4188456, at *2 (D.N.J. Aug. 31, 2018) ("The law of the case doctrine 'limits relitigation of an

issue once it has been decided' in the same case or litigation." (quoting *Hoffman v. City of Bethlehem*, 739 F. App'x 144, 150 (3d Cir. June 20, 2018)). The doctrine is grounded in concerns for "finality and efficiency of then judicial process by protecting against the agitation of settled issues." *In re Cont'l*, 279 F.3d at 233 (quoting *Christianson*, 486 U.S. at 816). "A court can, however, reconsider a previously decided issue if extraordinary circumstances exist, 'such as if new evidence becomes available, a supervening law has been introduced, or the prior decision was clearly erroneous and would create manifest injustice.'" *Zisa v. Haviland*, No. 17-5551, 2022 WL 1997268, at *3 (D.N.J. June 3, 2022) (quoting *Walker v. Coffey*, 956 F.3d 163, 170 (3d Cir. 2020)).

In the case at bar, Judge Shipp's prior holding regarding the applicability of the partnership agreement applies. Judge Shipp found relevant that the "conduct at issue in the Amended Complaint relates to Sage as a corporation not Sage as a partnership." (Mem. Op. at 7.) The same holds true in Gupta's Counterclaim — all allegations of misconduct by Sharma relate to Sage Group Consulting, Inc., not Sage Group, the partnership. (*See e.g.*, Countercl. ¶ 17 ("[Sharma], on information and belief, knew that the $700,000 had been transferred to Sage for the above stated purpose. [Gupta] had no knowledge whatsoever of the transfer of funds . . ."); *id.* ¶ 21 ("[Sharma] participated in the scheme by creating fake diligence reports, fake websites, and fake invoices, all in exchange for exorbitant fees. [Sharma], without [Gupta's] knowledge or approval, involved Sage in certain aspects of . . . work despite this work being [] outside the scope of Sage's business.").) In fact, the Counterclaim lacks any mention of Sage Group, the partnership; all assertions relate to the corporation.

Moreover, Judge Shipp rejected Gupta's argument that "the Partnership Agreement also applied to Sage as a corporation" because, as Judge Shipp held, "a partnership is a different corporate form from a corporation." (Mot. at 7.) Gupta attempts to reargue this same point in the

counterclaim, alleging that Sage and Gupta entered the partnership agreement "not with the understanding that the company was in fact a partnership but rather as an agreement outlining the terms by which [Sage and Gupta] would operate the company." (Countercl. ¶ 6.) This argument again is unavailing. The corporate structure matters. For example, a corporation's shareholders have limited liability, whereas "partners are personally liable, jointly and severally, for all of the obligations of the partnership." *See* 1 NJ Corporations and Other Business Entities § 1.03 (2023). Judge Shipp also found that "several corporate governance documents for Sage," which Sharma provided to the Court, "buttress[ed] that that the partnership wound up some time ago and is not relevant to this dispute." (Mem. Op. at 7.)

The parties could have chosen to organize their entity as a partnership, but instead chose to incorporate as Sage Group Consulting, Inc. (*See id.*) The Court must honor this decision. Gupta ignores Judge Shipp's prior holding in this litigation, and thus, the Court applies the law of the case doctrine. *See Blackbook Cap., Inc. v. Fin. Indus. Regul. Auth., Inc.*, No. 19-CV-21772, 2021 WL 1827268, at *3 (D.N.J. May 5, 2021) (applying the law of the case doctrine where plaintiff recycled the "same arguments that the Court [previously] addressed" and failed to mention "any new changes in the law"); *Schwartz v. Avis Rent a Car Sys., LLC*, No. 11-4052, 2016 WL 3457160, at *9 (D.N.J. June 21, 2016) (holding the doctrine applied where plaintiff "has not shown any changed circumstances" since the Court's prior decision). Therefore, the Court will dismiss Count One against Sharma.

### B. COUNTS TWO, THREE, FOUR, AND FIVE

Gupta asserts claims for misappropriation of corporate funds, breaches of the duties of care, good faith and fair dealing, loyalty and fiduciary duties, usurpation of business opportunity, and

unjust enrichment against Sharma in Counts Two, Three, Four, and Five. (Countercl. ¶¶ 36–51.)[4] Sharma moves to dismiss these claims, arguing that Gupta fails to allege facts to state a claim. (*See* Mot. at 6–10.)

Before addressing the merits of Gupta's claims, the Court must determine whether Gupta has standing to assert these claims, notwithstanding neither party asserting this issue in their briefing.[5] *See Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001) ("Although neither party argues that Steele's appeal is moot, we are required to raise issues of standing *sua sponte* if such issues exist."); *In re Phar-Mor, Inc. Sec. Litig.*, 900 F. Supp. 777, 784 (W.D. Pa. 1994) (*sua sponte* dismissing claim for lack of standing where claims were brought as direct, instead of derivative claims). A court's standing inquiry "consist[s] of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations." *Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335 (1990). Prudential standing requires a plaintiff to "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). As the Third Circuit has explained, this bars a plaintiff, "in shareholder suits . . . 'from initiating actions to enforce the rights of the corporation.'" *Willekes v. Serengeti Trading Co.*, 783 F. App'x 179, 183 (3d Cir. 2019) (quoting *Franchise Tax Bd.*, 493 U.S. at 335)). Therefore, "a shareholder (even

---

[4] The parties do not address which state's law applies to Gupta's counterclaims. "[A] federal court sitting in diversity applies the choice of law principles of the forum state." *Swift v. Pandey*, No. 13-649, 2014 WL 1366436, at *7 (D.N.J. Apr. 7, 2014) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). As such, the Court will apply New Jersey's choice of law rules. New Jersey's choice of law rules dictate that "the law of the state of incorporation governs internal corporate affairs." *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) (citing *Brotherton v. Celotex Corp.*, 493 A.2d 1337, 1339 n. 1 (N.J. Super. Ct. 1985)). Since Sage is a New Jersey corporation, the Court will apply New Jersey law.

[5] A district court must have subject matter jurisdiction through "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). It is well settled that if a court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003); *Ben-Haim v. Neeman*, 543 F. App'x 152, 154 (3d Cir. 2013).

a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation." *Id.* (quoting *In re Kaplan*, 143 F.3d 807, 811–12 (3d Cir. 1998)); *see also Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970) ("A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets.")

"A corporation is regarded as an entity separate and distinct from its shareholders." *Tully v. Mirz*, 198 A.3d 295, 301 (N.J. Super. Ct. App. Div. 2018) (quoting *Strasenburgh v. Straubmuller*, 683 A.2d 818, 829 (N.J. 1996)). As such, suits for injuries to the corporation may only be maintained by the corporation. *Id.* New Jersey adheres to the "American rule," which provides that "shareholders who suffer an injury 'may not recover for the injury to [their] stock alone, but must seek recovery derivatively [on] behalf of the corporation.'" *Id.* (quoting *Strasenburgh*, 683 A.2d at 829). Suits brought on behalf of the corporation are "derivative suits," whose purpose is to "place in the hands of the individual shareholder a means to protect the interests of the corporation." *Strasenburgh*, 683 A.2d at 829 (citations and quotation marks omitted). A direct suit, on the other hand, "is one in which liability is based upon an injury or violation of a duty owed to a particular shareholder." *Tully*, 198 A.3d at 301. To maintain a direct action against the corporation, a shareholder must demonstrate a "special injury," or "a wrong suffered by [the] plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote." *Id.* (citations and quotation marks omitted). "Whether a claim is classified as direct or derivative depends on: (1) whether the shareholder or the corporation suffered the alleged harm; and (2) who would receive

the benefit of any remedy." *Hoch v. Alexander*, No. 11-217, 2011 WL 2633722, at *5 (D. Del.

July 1, 2011) (citing *Grayson v. Imagination Station, Inc.*, No. 5051, 2010 WL 3221951, at *4

(Del. Ch. Aug. 16, 2010)).[6]

In the case at bar, Gupta asserts causes of action against Sharma for misappropriation of

corporate funds, breaches of the duties of care, good faith and fair dealing, loyalty and fiduciary

duties, usurpation of business opportunity, and unjust enrichment. (Countercl. ¶¶ 36–51.) These

are prototypical derivative claims that must be asserted on behalf of the corporation. *See Tully*,

198 A.3d at 302 (dismissing direct misappropriation claim); *Strasenburgh*, 683 A.2d at 831–32

(dismissing direct breach of fiduciary duty claim); *In re Franklin Mut. Funds Fee Litig.*, 388 F.

Supp. 2d 451, 461 (D.N.J. 2005) (same); *Willekes*, 783 F. App'x at 184 (dismissing direct unjust

enrichment claim); *In re Cendant Corp. Litig.*, 264 F.3d 286, 295 (3d Cir. 2001) (explaining duty

of loyalty claims are derivative).

A review of the factual allegations contained in the counterclaim supports the finding that

Gupta's claims are derivative. For example, Gupta alleges Sharma "diverted *Sage* clients and

projects to companies in which he or [his wife] have an ownership interest," (Countercl. ¶ 46),

directed *Sage* to accept funds to protect another company from insolvency, (*id.* ¶¶ 16–18),

"diverted *Sage* funds and revenue to companies in which he or [his wife] have an ownership

interest," (*id.* ¶ 37), used *Sage* to "execute a scheme" to defraud Orion out of millions of dollars,

(*id.* ¶¶ 20–30), and "unjustly retained the benefit of revenues, funds, sale proceeds, and clients

that[] rightfully belong to *Sage*," (*id.* ¶ 49) (all emphasis added). Indeed, Gupta alleges that "[if]

in fact any of the . . . fees were in fact paid to [Sharma], they were not reported to *Sage* and should

---

[6] In reviewing corporate law, New Jersey courts find guidance in decisions from the Delaware state courts.
*See Lawson Mardon Wheaton, Inc. v. Smith*, 734 A.2d 738, 746 (N.J. 1999)

be accounted for *in the company's overall revenues*." (*Id.* ¶ 31.) (emphasis added). Gupta's suit purports to make Sage, the corporation, whole; the harm does not apply to him individually. Suits to "protect the interests of the corporation" are the exact "purpose of a derivative suit." *Tully*, 198 A.3d at 301 (quoting *Strasenburgh*, 683 A.2d at 829).

Certain corporations, such as Sage, have a limited number of shareholders and are considered "closely held corporations." *See Lavene v. Lavene*, 392 A.2d 621, 623 (N.J. Super. Ch. Div. 1978) ("A closely held corporation has been defined as a corporation in which the stock is held in a few hands."). In these circumstances, "courts have discretion to construe a derivative cause of action as a direct claim if doing so 'will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.'" *Tully*, 198 A.3d at 301–02 (quoting Principles of Corporate Governance: Analysis and Recommendations, § 7.01 (d) (Am. Law Inst. (1992))).

The *Orion* discussion in the Counterclaim makes clear that the Court would prejudice potential creditors if it were to allow Gupta's direct action to proceed. While a court "has discretion to construe a derivative cause of action as a direct claim," it cannot do so where this would "'prejudice the interests of creditors of the corporation" or "interfere with a fair distribution of the recovery among all interested persons." *Tully*, 198 A.3d. at 301–02 (quoting Principles of Corporate Governance, § 7.01 (d))). If Gupta were to recover for Sharma's alleged breaches— money that is owed back to Sage—Gupta would be taking money that could satisfy debts to creditors such as Orion. In addition, there may be other creditors for whom Sage owes money; Gupta fails to provide facts one way or another. As such, the Court will not interpret Gupta's allegations as a direct claim. Therefore, the Court finds that Gupta does not have standing to bring

these claims against Sharma, and the Court dismisses Counts Two, Three, Four, and Five. *See Willekes*, 783 F. App'x at 184 (no standing where shareholder asserted claims on behalf of corporation).[7]

Finally, the Court declines to assess sanctions or dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 11. Pursuant to Rule 11, a court may impose sanctions on attorneys. Rule 11 requires that any "pleading, written motion, or other paper" filed or submitted to the Court "not be[] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). The goal of Rule 11 is accountability, *Keister v. PPL Corp.*, 677 F. App'x. 63, 68 (3d Cir. 2017), and its central purpose is to deter baseless filings, *Howe v. Litwark*, 579 F. App'x. 110, 115 (3d Cir. 2014) (quoting *Cooter & Geil v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). "It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x. 174, 185 (3d Cir. 2008) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 201 n.6 (3d Cir. 2008)). However, the standard under Rule 11 is "stringent." *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 n.7 (3d Cir. 2016). Sanctions are reserved for "claim[s] . . . wholly without merit" and "are reserved for correcting litigation abuse." *Renex*, 2023 WL 4580965, at *5 (citations omitted). Any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct. Fed. R. Civ. P. 11(c)(4).

---

[7] The Court also dismisses Count Six, which seeks declaratory relief. "Injunctive relief is not a cause of action, but only a remedy." *Monclova v. U.S. Bank Nat'l Ass'n*, No. 15-7383, 2016 WL 4260783, at *4 (D.N.J. Aug. 11, 2016), *aff'd sub nom.* 675 F. App'x 115 (3d Cir. 2017); *see also Educ. Impact, Inc. v. Danielson*, No. 14-937, 2015 WL 381332, at *19 (D.N.J. Jan. 28, 2015) (same).

The Court discerns no basis for imposing sanctions against Gupta. The counterclaim is based, in part, on two lawsuits in which Sage was involved. It does not appear to be asserted with the intent to harass or delay, as this litigation has been proceeding in the interim. Moreover, while the Court is to construe Sharma's pleading liberally as he is proceeding *pro se*, the Court notes that the rule requires a sanctions motion to be filed "separately from any other motion and must describe the specific conduct that allegedly violates [Rule 11]." Fed. R. Civ. P. 11(c)(2). Sharma failed to abide by this directive here.

IV.    **CONCLUSION**

For the foregoing reasons, Counterclaim Defendant Sharma's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The Court denies Sharma's request for sanctions against Gupta but dismisses Counts One through Six against Sharma. Gupta may file an amended complaint within thirty (30) days addressing the deficiencies discussed herein. An appropriate Order will accompany this Opinion.

_____

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: January 8, 2024